IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                              No. CR 12-3182 JB

GEORGE ROYBAL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Early Release from Supervised Probation, filed September 3, 2021 (Doc. 1208)("Motion"). Roybal moves pro se. The Court held a hearing on November 15, 2021. See Clerk's Minutes at 1, filed November 15, 2021 (Doc. 1212). The primary issue is whether the Court should grant Defendant George Roybal's Motion where the United States Probation Office ("USPO") does not take a position on the Motion, the United States opposes it and where Roybal did not appear at the hearing. Because Roybal has not yet completed half of his term of supervised release, the Court denies Roybal's Motion without prejudice.

## FINDINGS OF FACT

    1.    Roybal pled guilty in 2015 to Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and to Witness Tampering, in violation of 18 U.S.C. § 1512(a)(2)(A), see Plea Agreement ¶ 3, at 2, filed January 14, 2015 (Doc. 735); Judgment in a Criminal Case at 1-2, filed November 17, 2015 (Doc. 1070)("Judgment").

2. Roybal "worked very closely with the head of the drug trafficking organization." See Transcript of Early Termination Hearing at 5:19-20 (Long)(taken November 15, 2021)("Tr.").[1]

3. In 2015, the Court sentenced Roybal to 97 months' imprisonment, followed by three years of supervised release. See Clerk's Minutes at 1, filed May 27, 2015 (Doc. 963)("Sentencing Minutes").

4. Roybal "received no write-ups or disciplinary actions by the Bureau of Prisons during his confinement, nor by his Probation Officer during the time he has been on supervised probation." Motion at 2.

5. Roybal "earned meritorious deductions for [his] good behavior" while incarcerated. Letter from George Roybal to the Court at 1 (dated September 1, 2021), filed September 3, 2021 (Doc. 1208)("Letter").

6. Roybal is doing well on probation: he is working and is free of drugs. See Tr. at 6:22-24 (Probation).

7. Roybal "has obtained a nursing degree in Critical Care Nursing and has been informed by the New Mexico Board of Nursing that he may obtain his license to practice nursing once he is released from supervised probation." Motion at 5.

---

[1]The Court's citations to the draft transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

  8.  Many jobs in critical care nursing offer salaries in excess of $5,000 a week.  See Email from Nomad Health to George Roybal at 10-14 (dated September 1, 2021), filed September 3, 2021 (Doc. 1208)("Email").

  9.  Once Roybal is released from supervised probation, he will able to "obtain his license to practice nursing."  Motion at 5.

  10.  Roybal has "fully complied with all standard and special conditions of his Court ordered supervised probation."  Motion at 6.

  11.  Roybal is currently "working for an asphalt paving company" and does other volunteer work in the local community.  Letter at 1.

  12.  Roybal has "strong family ties" and "strong relationships."  Motion at 6-7.

  13.  Roybal does not use drugs or alcohol.  See Motion at 7.

## PROCEDURAL BACKGROUND

Roybal pled guilty in 2015 to Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and to Witness Tampering, in violation of 18 U.S.C. § 1512(a)(2)(A), see Plea Agreement ¶ 3, at 2.  On May 27, 2015, the Court sentenced Roybal to 97 months' imprisonment followed by three years of supervised release, see Sentencing Minutes at 1, and commenced his supervised release on August 28, 2020, see United States' Response to Defendant George Roybal's Motion for Early Release from Supervised Probation (Doc. 1208) ¶ 2, at 1, filed September 8, 2021 (Doc. 1209)("Response").  Roybal moved to terminate his supervised release on September 3, 2021.  See Motion at 1.

1. **The Motion.**

Roybal requests early termination of his period of supervised release. See Motion at 1. He argues that he "received no write-ups or disciplinary actions by the Bureau of Prisons during his confinement, nor by his Probation Officer during the time he has been on supervised probation." Motion at 2. Roybal contends that "[t]he Probation Office has stated to Defendant that it does not oppose Defendant's Motion for Early Release from Supervised Probation." Motion at 2. Roybal argues that

> "[The] Court has authority under 18 U.S.C. § 3583(e)(1) to terminate a term of supervised release at any time after one year of supervised release if the Court is satisfied that two requirements are met. First, early termination must be 'warranted by the conduct of the Defendant released.' 18 U.S.C. § 3583(e)(1). Second, early termination must be in 'the interest of justice.' Id."

Motion ¶ 7, at 2-3 (quoting United States v. Shaw, No. 10-CR-0488-CMA, 2020 WL 1062896, at *2 (D. Colo. March 5, 2020)(Arguello, J.)). Roybal also asserts that "'the Judicial Conference elaborated on 18 U.S.C. § 3583(e)(1)'s statutory criteria and recommended that the United States Probation Office and courts evaluate two sets of factors depending on how long the defendant has been on supervised release when requesting early termination.'" Motion at 3 (quoting United States v. Shaw, 2020 WL 1062896 at *2 (citing Guide to Judiciary Policy, Vol. 8E, § 360.20(b)-(c)(July 2, 2018))). Roybal argues that, according to the Guide to Judiciary Policy, defendants who request early termination during the first 18 months of supervision must "'(1) substantially satisf[y] the requirements of the court order; and (2) demonstrate[] a willingness and capability to remain lawful beyond the period of supervision.'" Motion at 4 (quoting United States v. Shaw, 2020 WL 1062896 at *3 (quoting Guide to Judiciary Policy, Vol. 8E, § 360.20(b)-(c))).

Roybal argues that he meets the Guide to Judiciary Policy's six criteria[2] for defendants who request early termination after serving 18 or more months of supervised release, for whom

---

[2]The Guide to Judiciary Policy lists two criteria for early termination during the first 18 months of supervised release, and six criteria for those who have completed 18 months:

> (b) During the first 18 months of supervision, the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives, to include having:
>
>> (1) substantially satisfied the requirements of the court order; and
>>
>> (2) demonstrated a willingness and capability to remain lawful beyond the period of supervision.
>
> **Note**: Officers should not recommend persons for early termination who have an identified higher risk to community safety.
>
> (c) At 18 months, there is a presumption in favor of recommending early termination for persons who meet the following criteria:
>
>> (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;
>>
>> (2) The person presents no identified risk of harm to the public or victims;
>>
>> (3) The person is free from any court-reported violations over a 12-month period;
>>
>> (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
>>
>> (5) The person is in substantial compliance with all conditions of supervision; and
>>
>> (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

there is a presumption in favor of early termination.  See Motion at 4 (citing United States v. Shaw, 2020 WL 1062896 at *3 (citing Guide to Judiciary Policy, Vol. 8, Part E, § 360.20(b)-(c))).  First, Roybal argues that he is not a "career drug offender or career criminal . . . or has not committed a sex offense or engaged in terrorism."  Motion at 4.  Second, he argues that he is not a risk to the public or a victim, because he "has never been charged, accused or convicted of harming any member of the public and . . . has always lived a peaceful life."  Motion at 4-5.  Third, Roybal contends that he has no court-reported violations, because he "received no write-ups or disciplinary actions" either during his confinement or on supervised probation.  Motion at 5.  Fourth, Roybal argues that he "has been gainfully employed during the period of supervised probation . . . [,] has obtained a nursing degree in Critical Care Nursing and has been informed by the New Mexico Board of Nursing that he may obtain his license to practice nursing once he is released from supervised probation."  Motion at 5.  Fifth, Roybal states that he has "fully complied with all standard and special conditions of his Court ordered supervised probation."  Motion at 6.  Finally, Roybal states that he has "strong family ties, . . . enormous future employment opportunities," a "drug and alcohol free existence, . . . faith and . . . strong relationships."  Motion at 6-7.  Roybal also wrote a letter to the Court, explaining that probation is "hindering me from reaching my greatest potential in my career field.  I am a fully trained Critical Care Nurse and would like an opportunity to help out during this covid 19 pandemic and mutating Delta Variant."  Letter at 1.  Roybal attaches to his Letter an email showing various job postings in the field of critical care nursing, many of which offer salaries in excess of $5,000 a week.  See Email at 10-14.  Roybal

---

Guide to Judiciary Policy, Vol. 8, Part E, § 360.20(b)-(c)(bold in original).

states that he is currently "working for an asphalt paving company" and does other volunteer work. Letter at 1.

### 2. **The Response.**

The United States responds to Roybal's Motion, arguing that Roybal's assertion that the USPO does not oppose his Motion is "improper." Response at 1. The United States asserts, instead, that the USPO "does not take any position on this motion." Response at 1. The United States indicates that it did not receive a copy of the Motion before it was filed and that the United States opposes the Motion. See Response at 1. Roybal did not file a reply.

### 3. **The Hearing.**

The Court held a hearing on the Motion on November 15, 2021, for which Roybal did not appear in person or telephonically. See Clerk's Minutes at 1. The Court's Courtroom Deputy called Roybal's telephone number and the Court left a message, informing Roybal that the telephone conference line was open for him to join the hearing. See Tr. at 2:6-11 (Court). Thirty minutes after the hearing's scheduled start, the Court called the case, see Tr. at 3:13-15 (Court), and called upon the United States to state its position on the Motion, see Tr. at 3:17-20 (Court). The United States stated that it was not given a copy of the Motion before it was filed, because it was filed pro se, and that the USPO did not take a position on it. See Tr. at 4:6-9 (Long). The United States explained that, usually, "if someone has been compliant and generally performing well, [the USPO] typically will consult our office once [the defendant has] served fifty percent" of their supervised release term, Tr. at 4:16-19 (Long), and that, "[m]ost often," the United States "agree[s] with Probation since they're the ones working with the defendant," Tr. at 5:1-3 (Long). The United States continued that it would assess Roybal's request for early termination of

supervised release after 18 months, because Roybal "received a term of three years' supervised release." Tr. at 4:19-20 (Long). The United States explained that Roybal "kind of jumped the gun" by moving for early termination before half of his term had elapsed, Tr. at 5:9-10 (Long), and that, although the Court has statutory authority to terminate Roybal's supervision after one year, "this is a departure from common practice," Tr. at 5:10-12 (Long). The United States also noted that Roybal's underlying charge is serious, because he "worked very closely with the head of the drug trafficking organization." Tr. at 5:19-20 (Long). The United States expressed concern about terminating Roybal's supervised release after just one year and asked the Court to deny the Motion on the pleadings. See Tr. at 5:21-25 (Long). The United States noted:

> Probation did talk to Mr. Roybal in advance of today's hearing and he was aware of it. I can't fault him for going to his job instead. It could be that he wasn't able to get leave to come. But I don't think it makes sense to reschedule this. . . . [S]hould he want to reassess this in a couple of months working with his probation officer[] I'll be more than happy to entertain that request at that time if they would like me to.

Tr. at 6:4-14 (Long).

The Court next asked for the USPO's position on the Motion. See Tr. at 6:17 (Court). The USPO stated that "I talked to Mr. Roybal this morning to remind him of this hearing," and that Roybal is "doing well[,] [n]o issues, no major issues with him. His drug tests are clean. He's working." Tr. at 6:22-24 (Probation). The USPO confirmed that "we typically wait until 18 months until we start reviewing the cases for early termination," Tr. at 6:25-7:1 (Probation), and had explained that to Roybal, but Roybal had filed the Motion early, pro se, "[b]ecause he has a background in nursing he wants to get off the probation earlier to potentially get a job at a hospital," Tr. at 7:9-12 (Probation). The Court stated that it will deny the motion without prejudice, agreeing

- 8 -

with the United States that the hearing should not be reset, and that it is a little early to grant the Motion. See Tr. at 7:15-19 (Court). The Court stated that

> the courthouse is always open but I'd encourage Mr. Roybal to wait until he's served at least 50 percent and . . . to work with Probation to see if Probation at that point has a recommendation[,] and that they also work with the U.S. attorney and see what their position is[.] [I]t's probably going to be a little difficult for him to get early termination unless everybody is on board. . . . [I]f everybody is on board I'll probably go along with it.

Tr. at 7:20-8:3 (Court).

## **LAW REGARDING EARLY TERMINATION OF SUPERVISED RELEASE**

The United States Court of Appeals for the Eleventh Circuit has stated:

> The primary goal of supervised release is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period of time in prison for punishment or other purposes but still needs supervision and training programs after release.

United States v. Pugh, 515 F.3d 1179, 1199 (11th Cir. 2008)(quoting United States v. Armendariz, 451 F.3d 352, 362 n.6 (5th Cir. 2006)(citing S. Rep. No. 98-225, at 124 (1984), reprinted in 1984 U.S.C.C.A.N. 3182)). "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000)(citing S.Rep. No. 98-225, at 124). Congress prohibited incarcerating an offender for rehabilitation purposes, but a court may consider an offender's need for rehabilitation in prescribing supervised release conditions. See United States v. Burgos, 276 F.3d 1284, 1290 n.6 (11th Cir. 2001); United States v. Vigil, No. CR 05-2051 JB, 2010 WL 2301708, at *9 (D.N.M. May 4, 2010)(Browning, J.).

Pursuant to 18 U.S.C. § 3583(e)(1), which specifically refers the court to consider the factors in 18 U.S.C. § 3553(a), the sentencing court may "terminate a term of supervised release

and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e). "Whether to grant a motion to terminate a term of supervised release under § 3583(e)(1) is a matter of district court discretion." Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2011)(citing United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011)). "Abuse of discretion occurs when the district court commits a serious error of judgment, such as the failure to consider an essential factor." United States v. Lowe, 632 F.3d at 997.

In accord with 18 U.S.C. § 3583(e), the district court must consider the factors that 18 U.S.C. § 3553(a) sets forth before terminating a term of supervised release. See 18 U.S.C. § 3583(e). The first factor the Court examines is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor is "the need for the sentence imposed." 18 U.S.C. § 3553(a)(2). In analyzing the second factor, the district court considers what sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, adequately deters criminal conduct, protects the public, and provides the defendant with educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a)(2)(A)-(D). The Court shall also consider "any pertinent policy statement . . . issued by the Sentencing Commission . . . ." 18 U.S.C. § 3553(a)(5)(B), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). After considering the factors that 18 U.S.C. § 3553(a) sets forth, the district court examines whether the

defendant's conduct warrants early termination and whether the early termination of supervised release is in the interest of justice.  See 18 U.S.C. § 3583(e)(1).  Finally, the district court exercises its discretion in granting or denying a defendant's motion for early termination of supervised release.  See 18 U.S.C. § 3583(e).

The Administrative Office of the United States Courts ("AO"), under the Judicial Conference's direction, publishes the Guide to Judiciary Policy, "the official repository of the federal judiciary's administrative policies."  AO, Guide to Judiciary Policy (last visited Dec. 3, 2021), available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy.  Volume Eight of the Guide to Judiciary Policy provides procedures and policies regarding Probation and Pretrial Services.  See AO, Guide to Judiciary Policy, Vol. 8 (last revised Dec. 13, 2019), available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy.  Part E -- covering Post-Conviction Supervision -- includes criteria a court should consider before ending supervision early.  See AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20.  Part E lists two criteria for early termination during the first 18 months of supervised release, and six criteria for those who have completed 18 months, for whom there is a presumption in favor of early termination:

> (b)     During the first 18 months of supervision, the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives, to include having:
>
> > (1)     substantially satisfied the requirements of the court order; and
> >
> > (2)     demonstrated a willingness and capability to remain lawful beyond the period of supervision.
>
> **Note:** Officers should not recommend persons for early termination who have an identified higher risk to community safety.

    (c)    At 18 months, there is a presumption in favor of recommending early termination for persons who meet the following criteria:

        (1)    The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;

        (2)    The person presents no identified risk of harm to the public or victims;

        (3)    The person is free from any court-reported violations over a 12-month period;

        (4)    The person demonstrates the ability to lawfully self-manage beyond the period of supervision;

        (5)    The person is in substantial compliance with all conditions of supervision; and

        (6)    The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20 (bold in original).

## ANALYSIS

"Whether to grant a motion to terminate a term of supervised release under § 3583(e)(1) is a matter of district court discretion." Rhodes v. Judiscak, 676 F.3d at 933 (citing United States v. Lowe, 632 F.3d at 998). A court has statutory authority to terminate supervised release after one year:

The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

    (1)    terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is

>warranted by the conduct of the defendant released and the interest of justice[.]

18 U.S.C. § 3583(e).  While the Court has the authority to terminate supervised release after one year, it must consider certain factors before ending supervision.  See 18 U.S.C. § 3583(e); 18 U.S.C. § 3553(a).  The first factor that the Court examines is "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Here, Roybal's underlying offense is serious: he has pled guilty to Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and to Witness Tampering, in violation of 18 U.S.C. § 1512(a)(2)(A).  See Plea Agreement ¶ 3, at 2.  In addition, Roybal "worked very closely with the head of the drug trafficking organization."  Tr. at 5:19-20 (Long).  On the other hand, Roybal has "received no write-ups or disciplinary actions by the Bureau of Prisons during his confinement, nor by his Probation Officer during the time he has been on supervised probation."  Motion at 2.  See Tr. at 6:22-24 (Probation)("He's doing well.  No issues, no major issues with him.  His drug tests are clean.  He's working.").  The Court recognizes that Roybal has made good progress under supervised release so far, and that he is using his time productively by working for an asphalt company and volunteering for various community projects.  See Letter at 1.

Considering the second factor, "the need for the sentence imposed," 18 U.S.C. § 3553(a)(2), the Court determines that, given the seriousness of his underlying offense, releasing Roybal from supervised release before half his term has elapsed would not reflect its seriousness, promote respect for the law, adequately deter criminal conduct, or protect the public.  See 18 U.S.C. § 3553(a)(2)(A)-(C).  Whether denying Roybal's Motion would benefit his educational or vocational training, however, is a closer question.  See 18 U.S.C. § 3553(a)(2)(D).  The Court commends Roybal's eagerness to obtain work in his chosen vocation as a nurse and to use his

skills to help others during the current pandemic.  See Letter at 1 ("I am a fully trained Critical Care Nurse and would like an opportunity to help out during this covid 19 pandemic and mutating Delta Variant.").  There are many job opportunities in Roybal's field of critical care nursing, many of which offer salaries in excess of $5,000 a week.  See Email at 10-14.  Thus, the Court finds that Roybal would benefit from early termination of supervised release, and this weighs against the Court denying the motion.

The Court also shall consider "any pertinent policy statement . . . issued by the Sentencing Commission . . . ." 18 U.S.C. § 3553(a)(5)(B), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7).  Roybal urges the Court to consider the factors listed in the Guide to Judiciary Policy which the Honorable Christine Arguello, United States District Judge for the District of Colorado, cited in United States v. Shaw, 2020 WL 1062896.  See Motion at 3-7 (citing United States v. Shaw, 2020 WL 1062896 at *3 (citing Guide to Judiciary Policy, Vol. 8E, § 360.20(b)-(c)).  Because Roybal is applying for the termination of his supervised release before serving 18 months of his three-year term, there is no "presumption in favor of recommending early termination," even if he does meet the Guide to Judiciary Policy's criteria.  Motion at 4 (quoting United States v. Shaw, 2020 WL 1062896 at *3 (quoting Guide to Judiciary Policy, Vol. 8, Part E, § 360.20(c))).  Addressing the Guide to Judiciary Policy's criteria, Roybal argues that he is not a "career drug offender or career criminal . . . or has not committed a sex offense or engaged in terrorism," is not a risk to the public or a victim, because he "has never been charged, accused or convicted of harming any member of the public and . . . has always lived a peaceful life," has no court-reported

violations, "has been gainfully employed during the period of supervised probation . . . [and] obtained a nursing degree in Critical Care Nursing and . . . may obtain his license to practice nursing once he is released from supervised probation," has "fully complied with all standard and special conditions of his Court ordered supervised probation," and has "strong family ties, . . . enormous future employment opportunities," a "drug and alcohol free existence, . . . faith and . . . strong relationships." Motion at 4-7.

The Guide to Judiciary Policy states that a court should consider whether a person seeking termination of supervision before 18 months have elapsed has "substantially satisfied the requirements of the court order; and . . . demonstrated a willingness and capability to remain lawful beyond the period of supervision." AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20(b). Roybal's conduct demonstrates a willingness and capability to remain lawful beyond the period of supervision, but the Court cannot conclude that completion of only one third of a three-year term of supervised release substantially satisfies the Court's order. While Roybal's conduct on supervised release is sufficient to warrant early termination with the United States' and the USPO's support, and after the standard period of half his term has elapsed, Roybal's request for termination after only one year -- and without the United States' or the USPO's support -- is a different matter. Despite the promising nature of Roybal's vocation and employment opportunities, his support from family, and his ability to live a sober and clean life, see Motion at 6-7, Roybal's underlying offense is serious, and the Court ordinarily expects the United States and the USPO to support a request for early termination. As the Court stated at the hearing, it is more inclined to grant a motion for early termination if both the United States and the USPO are on board with it. See Tr. at 7:20-8:3 (Court). Currently, Roybal has served 15 months of his 36 month term of supervised

release, see Response at 1, and so he need wait only another three months before the USPO might support a request for termination. The United States has indicated that it will consider a motion for early termination at that time. See Tr. at 6:4-14 (Long). Accordingly, the Court will not exercise its discretion in terminating Roybal's period of supervised release before he has served half of his three-year term. The Court, therefore, denies Roybal's Motion without prejudice.

**IT IS ORDERED** that the Defendant's Motion for Early Release from Supervised Probation, filed September 3, 2021 (Doc. 1208), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Fred J. Federici
  Acting United States Attorney
Stephen R. Kolz
Shana B. Long
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

George Roybal
Albuquerque, New Mexico

    *Defendant pro se*